IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:16-cv-00906-BO

| | |
|---|---|
| KATHY LIVINGSTON, as Administratrix of The Estate of John David Livingston, II, MICHAEL CARDWELL, CHRISTINE BROOM, WESLEY WRIGHT, TYRONE BETHUNE, and RYAN HOLLOWAY, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs | ) |
| vs. | ) MEMORANDUM IN SUPPORT OF<br>) MOTION TO QUASH<br>) |
| NICHOLAS KEHAGIAS, in his individual capacity as a law enforcement officer with the Harnett County Sheriff's Department, JOHN WERBELOW, in his individual capacity as a law enforcement officer with the Harnett County Sheriff's Department, MICHAEL BRANDON KLINGMAN, in his individual capacity as a law enforcement officer with the Harnett County Sheriff's Department, JOHN KNIGHT, in his individual capacity as a law enforcement officer with the Harnett County Sheriff's Department, LARRY ROLLINS, in his official capacity as SHERIFF OF HARNETT COUNTY, North Carolina, WAYNE COATS, in his official capacities as a Major and Sheriff of Harnett County, North Carolina, and WESTERN SURETY COMPANY as Surety, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendant. | |

# INTRODUCTION

An untrammeled press is a vital source of public information, and an informed public is the essence of working democracy

*Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 585, 103 S. Ct. 1365, 75 L.Ed.2d 295 (1983).

This motion to quash responds to defense counsel's unwarranted attempt to use the court's subpoena power to convert news organizations into research firms, violating the reporter's privilege that has been recognized by the Fourth Circuit and is codified in North Carolina law. The privilege protects journalists from compelled disclosure of information unless it is directly relevant to the case, unavailable from any other source and serves a compelling need. In this case, the subpoena issued to the Movant, *The News & Observer*, seeks information that is available from alternative sources, such as witnesses and parties in the case, and which appears likely to be no more than a marginally helpful fishing expedition. Issues of discovery are addressed to the sound discretion of the district court. *Tiedman v. American Pigment Corporation,* 253 F.2d 803, 808 (4th Cir.1958). Accordingly, for the reasons explained in detail below, the subpoena should be summarily quashed.

# ARGUMENT

## THE SUBPOENA

Rule 45 permits a defendant to command a party to appear and testify or to produce documents and objects. F.R. CIV. P. 45. The right of subpoena is limited,

however, by the provision that a court may quash a subpoena that is unreasonable or oppressive or that implicates privileged information or materials.

In this matter, defendants sent a subpoena demanding Movant produce:

> The complete, unedited, audio and video recordings of all interviews conducted in connection with the investigation by Mandy Locke, and/or The News & Observer, of the Harnett County Sheriff's Department, entitled "N&O Investigation: Deadly Force," including but not limited to the following recorded interviews: Clayton Carroll, Lonnie Setzer, Jr., Chorey Sowinski, Bristol Edge, Bradley Timmerman, Wesley Wright, Donnie Scott, Christine Broom, Tyrone Bethune, a/k/a King Knowledge, Ryan Holloway, Michael Cardwell, and Nicholas Kehagias.

## THE REPORTER'S PRIVILEGE IN THE FOURTH CIRCUIT

Adopting the three-part balancing test first articulated in Justice Powell's concurring opinion *Branzburg v. Hayes*, 408 U.S. 665, 710, 92 S. Ct. 2646, 2671, 33 L.Ed.2d 626 (1972) (Powell, J., concurring), the Fourth Circuit has found that in considering whether a journalist's privilege applies in any given circumstance,

> it is necessary for the district court to balance the interests involved. [] To aid in the balancing of these interests, courts have developed a three part test: (1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information.

*LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) (citations omitted). See also *Ashcraft v. Conoco, Inc., 218 F.3d 282, 287 (4th Cir. 2000); Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1335 (4th Cir. 1993); *Miller v. Mecklenburg County*, 602 F. Supp. 675, 679 (W.D.N.C.1985), aff'd, 813 F.2d 402 (4th Cir.1986), *cert. denied*, 479 U.S. 1100, 107 S. Ct. 1325, 94 L. Ed.2d 177 (1987).

In a case analogous to the case at bar, Judge Thornburg quashed subpoenas issued to the *Asheville Citizen-Times* and WLOS-TV. *Penland v. Long*, 922 F. Supp.

1080 (W.D.N.C. 1995). In *Penland*, the sheriff terminated plaintiffs and then issued a press release regarding the termination. Journalists from both *The Citizen-Times* and WLOS interviewed the officers and the sheriff and published news reports. *Id.* at 1082. After the officers filed suit, they sent subpoenas to the journalists seeking

> 1. All notes, memoranda, drafts, and reports of all interviews with former Sheriff Charles H. Long and any interviews with any other person, including Teresa Penland and Ronnie Jackson, concerning the termination of the employment of Ms. Penland and Mr. Jackson by Sheriff Long or concerning any accusations against Ms. Penland or Mr. Jackson by [the alleged assault victim].
>
> 2. All correspondence, facsimile transmittals, messages, and other documents evidencing any communications between Sheriff Charles H. Long or members of his office and any employees of [the Respondents' respective employers] concerning the subjects mentioned in the foregoing paragraph.

*Id.* Based on the qualified privilege afforded to journalists under the First Amendment, both journalists filed motions to quash.

Judge Thornburg noted, "Clearly, the identities of these sources are nonconfidential, and the record indicates that their respective statements were nonconfidential as well. Therefore, Penland's subpoenas clearly encompass nonconfidential information from nonconfidential sources." *Id.* at 1082-83. After tracing the history of the journalist's privilege in the Fourth Circuit, Judge Thornburg found

> These opinions suggest that the journalists' qualified privilege under the First Amendment encompasses nonconfidential information from nonconfidential sources, and that the *LaRouche* balancing test is to be applied in a civil case even in the absence of confidentiality or vindictiveness.

4

*Id.* at 1084. Applying the test to the facts, Judge Thornburg found, "The Plaintiffs' state law defamation claim and constitutional claims accrued when they were terminated and the press release was issued, and any information provided to the media that was not publicized is of minimal relevance to these claims." *Id.* Considering the third prong of the test – whether there is a compelling need for the information sought – Judge Thornburg noted that the statements made by the parties to the reporters were not what was at issue in the case. "[W]hat is at issue is Defendant Long's words that were published in the media, not his unpublished words as they may appear in the Respondents' notes or memories." *Id.*

As the subpoena might touch on or relate to plaintiffs' state law claims in this case, North Carolina's robust statutory privilege, G.S. § 8-53.11, provides protection to Movant.[1] Considering attempted discovery from news media defendants in a defamation action, the North Carolina Court of Appeals wrote, "even though some relevant and material evidence might be contained in the requested notes and recordings, plaintiffs are 'not entitled to a fishing expedition to locate it.'" *James v. Bledsoe*, 198 N.C. App. 339, 346, 679 S.E.2d 494, 498 (2009) (internal citations omitted).

## THE REPORTER'S PRIVILEGE IN THIS CASE

At the heart of the instant case plaintiffs' are claims that the defendants, the Harnett County Sheriff's Office, has "a long and disturbing

---

[1] In a diversity action, the availability of an evidentiary privilege is governed by the law of the forum state. F.R. EVID. 501. *See Ashcraft v. Conoco*, Inc., 218 F.3d 282, 286, n.5 (4th Cir. 2000).

history of police misconduct, excessive force, and other civil rights violations against the citizens of Harnett County ... [and that plaintiffs are among] many individuals who, in recent years, have been brutalized, wrongfully detained, and humiliated by certain Harnett County Sheriff's deputies." DE 59, First Amended Complaint, ¶ 3. Plaintiffs allege multiple violations of state and federal law, including that "their civil rights were egregiously violated by certain Harnett County Sheriff's Deputies who committed illegal acts while acting under the color of state law." DE 59, First Amended Complaint, ¶ 1. Plaintiffs allege that defendants "used excessive force" and were grossly negligent, causing "personal injuries to all Plaintiffs and the wrongful death of John David Livingston, II." DE 59, First Amended Complaint, ¶ 2.

Much as in *Penland*, the information sought in this case is of marginal relevance, and there is no compelling need for its production. Unlike in *Penland*, there **are** alternative sources for the information sought, giving further justification to quash the subpoena. For these reasons, defendants fail all three prongs of the reporter's privilege test.

As Judge Hudson wrote in *State v. Peterson*, "The compelled production of a journalist's resource materials or testimony can constitute a significant intrusion into the newsgathering and editorial processes and may substantially undercut the public policy favoring the free flow of information to the public that is the foundation for the reporter's privilege." *State v.*

*Peterson*, 01-CRS-24821, 2003 WL 22965551, 31 Media L. Rep. 2501 (N.C. Super. June 30, 2003). The subpoena in this case is especially egregious because it was issued by the government or government actors, essentially sending the message to the media: If you investigate or report on the activities of the government, you will be subject to inquiry from the government and forced to turn over your work product. The reporter's privilege is in place precisely to prevent this coercive and harassing message and behavior.

The Information Is Not Relevant.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." F.R. EVID. 401.

As in *Penland*, the heart of the plaintiffs' case rests entirely in actions that predate any interviews conducted by Movant. Movant was not an eyewitness to any of the challenged activity, and any information Movant could provide is of little or no evidentiary value. To the degree Movant has responsive recordings by non-parties, such recordings contain hearsay statements. To the degree Movant has recordings by parties, the value of those statements pales in comparison with whatever actual evidence plaintiffs will produce to sustain their claims. Any statements made in the interviews presumably are duplicative of the statements they already have given in the pending litigation or will give at trial. Under the generally

7

applicable rules of discovery, it is appropriate for this Court to quash the subpoena because it seeks discovery that is "cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." F.R. Civ. P. 26(b)(2)(c). The parties and direct witnesses are the appropriate witnesses to provide testimony regarding plaintiffs' allegations.

### The Information *Is* Available from Alternative Sources.

By definition, an interview involves at least two people. Thus, to the degree the statements made in an interview are relevant to a legal proceeding, there are at least two sources for that information. Unlike in the criminal context, in which a criminal defendant might be legally unavailable as an alternative source, this is a civil case. Anyone who was interviewed by Movant is available to defendants for deposition and thus is an alternative source of information.

### There Is No Compelling Need for the Information.

The reporter's privilege requires that a party seeking information from a journalist go beyond demonstrating mere relevance to the underlying action. The party must demonstrate there is a compelling need for the information. Interpreting the North Carolina statute, which incorporates *Branzburg*'s three-part test, Judge Erwin Spainhour wrote that the test "essentially is whether the party seeking the testimony can establish the essential elements of his case, and proceed to a jury, without the journalist's testimony." *State v. Spivey*, 35 Media L. Rep. (BNA) 1137 (N.C. Super. 2006). Judge Spainhour found that "compelled production

8

Case 5:16-cv-00906-BO Document 82 Filed 01/08/18 Page 8 of 11

of a journalist's resource materials and testimony can constitute a significant intrusion into the newsgathering and editorial processes." *Id.* In *Spivey*, the prosecution sought a reporter's testimony related to a defendant's admission that he had injured his girlfriend's 11-month-old son. Notwithstanding the gravity of the case, Judge Spainhour found there was not a compelling need sufficient to intrude on the journalist's general right to be free from compelled disclosure.

In this case, any interest in requested materials must be balanced against the significant intrusion into the newsgathering process that would result from compelling production. The parties in this case can and should litigate their issues without relying on or drawing in journalists whose appropriate role is to investigate and report the news, not to serve as witnesses for plaintiff or defense.

## CONCLUSION

In this case, requiring Movant to comply with the subpoena will compromise Movant's independence, now and in the future. For these reasons, Movant respectfully requests that the Court quash the subpoenas.

This the 8th day of January 2018.

/s/ C. Amanda Martin
C. Amanda Martin
N.C. State Bar No. 21186
STEVENS MARTIN VAUGHN & TADYCH, PLLC
1101 Haynes Street, Suite 100
Raleigh, NC  27604
Telephone: 919-582-2300
Facsimile:  866-593-7695
Email:  amartin@smvt.com

# CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of January, 2018, I electronically filed the foregoing Memorandum In Support Of Motion To Quash with the Clerk of Court using the CM/ECF system addressed to the following counsel:

Dan M. Hartzog
Dan M. Hartzog Jr.
Katherine Barber-Jones
James C. Thornton
Cranfill Sumner & Hartzog LLP
Post Office Box 27808
5420 Wade Park Boulevard, Suite 300
Raleigh, North Carolina 27611-7808-
dmh@cshlaw.com
dhartzogjr@cshlaw.com
kbarber-jones@cshlaw.com
jthornton@cshlaw.com
(T) 919.828.5100
(F) 919.828.2277

Robert E. Zaytoun
Matthew D. Ballew
John R. Taylor
Zaytoun Law Firm, PLLC
3130 Fairhill Drive, Suite 100
Raleigh, North Carolina 27612
rzaytoun@zaytounlaw.com
mballew@zaytounlaw.com
jtaylor@zaytounlaw.com
(T) 919.832.6690
(F) 919.831.4793

Charles K. McCotter, Jr.
Post Office Box 12800
2859 Trent Road
New Bern, North Carolina 28561
CKM@Justice.com
(T) 252.635.1005
(F) 252.631.5037

Jesse Womble Jones
Post Office Box 104
Lillington, North Carolina 27546
jessejoneslaw@gmail.com
(T) 910.814.2661
(F) 910.814.3709

Monica Langdon Jackson
Harnett County.
Post Office Box 238
Lillington, North Carolina 27546
mjackson@harnett.org
(T) 910.814.6008
(F) 910.814.8261

This 8th day of January, 2018.

/s/ C. Amanda Martin
C. Amanda Martin
NC State Bar No. 21186
STEVENS MARTIN VAUGHN & TADYCH, PLLC
1101 Haynes Street, Suite 100
Raleigh, NC  27604
Phone: 919-582-2300
Facsimile:  866-593-7695
Email:  amartin@smvt.com