IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-906-BO

KATHY LIVINGSTON, as Administratrix )
of The Estate of John David Livingston, II, )
*et al.*, )
)
      Plaintiffs, )
)
v. )    <u>O R D E R</u>
)
NICHOLAS KEHAGIAS, both individually )
and in his official capacity as law )
enforcement officer with the Harnett County )
Sheriff's Department, *et al.*, )
)
      Defendants. )

This cause comes before the Court on a motion by movant The News and Observer Publishing Company (News & Observer) to quash subpoena. A hearing on the matter was held before the undersigned on February 22, 2018, at Raleigh, North Carolina. For the reasons that follow, defendants' subpoena is quashed in its entirety.

## BACKGROUND

This civil action involves allegations of misconduct and civil rights violations by several members of the Harnett County, North Carolina Sheriff's Office. Specifically, each plaintiff alleges that one or more of the deputy defendants used excessive force against him or her and that the deputies executed their duties in a grossly negligent manner. The plaintiffs further allege that the Sheriff's Office under the leadership of Sheriffs Rollins and Coats has a long and disturbing history of police misconduct and that the Office leadership has either condoned or turned a blind eye to misconduct by their deputies.

In April and May of 2016, prior to the filing of this case, the News & Observer published a four-part series entitled "Deadly Force," which reported on incidents of alleged excessive force by officers of the Harnett County Sheriff's Office, including the incidents alleged by plaintiffs in this suit. The "Deadly Force" series included videos and a podcast which contained video and audio recordings of plaintiffs and witnesses discussing the events which form the basis of their allegations. Defendants contend that they have learned that there are hours of recordings and videos of plaintiffs and witnesses which were never released by the News & Observer. At the request of counsel for defendants, a subpoena was issued to the News & Observer which demands:

> The complete, unedited, audio and video recordings of all interviews conducted in connection with the investigation by Mandy Locke, and/or The News & Observer, of the Harnett County Sheriffs Department, entitled "N&O Investigation: Deadly Force," including but not limited to the following recorded interviews: Clayton Carroll, Lonnie Setzer, Jr., Chorey Sowinski, Bristol Edge, Bradley Timmerman, Wesley Wright, Donnie Scott, Christine Broom, Tyrone Bethune, a/k/a King Knowledge, Ryan Holloway, Michael Cardwell, and Nicholas Kehagias.

## DISCUSSION

Federal Rule of Civil Procedure 45 provides that a party may command a party to appear and testify or produce documents or objects for review. Fed. R. CIv. P. 45(a). On a timely motion, a court must quash a subpoena which requires disclosure of privileged information, provided no exception or waiver applies, and a court may quash a subpoena where it would require disclosure of a trade secret or other confidential research. Fed. R. Civ. P. 45(d)(3). Whether to quash a subpoena is committed to the court's discretion. *See generally, Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 426 (4th Cir. 1996). The News & Observer has raised as the basis of its motion to quash the reporters' privilege, which protects against the invasion of a reporter's constitutional rights in gathering the news and safeguarding sources. *Branzburg v. Hayes*, 408 U.S. 665, 709 (1972) (Powell, J., concurring).

2

> As an initial matter, this Court reaffirms its commitment to a free and uninhibited press contributing to the robust and unfettered debate characteristic of our society. At the same time, this Court is aware that a generation of Supreme Court jurisprudence suggests that the First Amendment does not provide the press with an absolute shield from legal process.

*Stickels v. Gen. Rental Co.*, 750 F. Supp. 729, 731 (E.D. Va. 1990). Thus, to determine whether the reporters' privilege applies, the competing interests must be balanced, and

> [t]o aid in the balancing of these interests, courts have developed a three part test: (1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information.

*LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986). This test has been applied when determining whether the identity of a journalist's source may be required to be disclosed and whether a journalist may be forced to disclose unpublished materials in his possession. *Hatfill v. New York Times Co.*, 242 F.R.D. 353, 356 (E.D. Va. 2006). The test has further been applied to both confidential and nonconfidential sources and information. *Penland v. Long*, 922 F. Supp. 1080, 1084 (W.D.N.C. 1995).

Having reviewed the submissions by the parties and considered the arguments presented at the hearing, the Court has no hesitancy in concluding that the interests tip decidedly in favor of quashing the defendants' subpoena. First, as generally admitted by defense counsel, the material sought is not relevant to the underlying case in the traditional sense in that it does not help to prove or disprove the existence of a claim – it does not, for example as in *Stickels*, consist of photographs of an accident which forms the basis of the dispute. 750 F. Supp. at 732; *see also* Fed. R. Evid. 401 (relevant evidence has tendency to make fact more or less probable than it would be without the evidence, and such fact is one of consequence to determining the claim). Rather, defendants seek to use the unpublished materials *in an effort* to impeach the plaintiffs or their witnesses. The tenuous connection between the information sought and its relevancy to the underlying

proceedings falls flat in the face of the First Amendment's protection of the press and the well-established reporter's privilege.

Second, the information can be obtained by alternative means. Defendants have the power to depose the plaintiffs and any witnesses to the events involved in the complaint. *See LaRouche*, 780 F.2d at 1139. Defendants also plainly have access to any material which has already been published by the News & Observer.

Third, and perhaps most importantly, there is no compelling interest in the information. Indeed, defendants do not even know whether any of the material they seek will provide them with any basis on which to impeach the plaintiffs or witnesses. That the information in the News & Observer's files might provide "grist for the mill of cross-examination," [DE 84], is not sufficiently compelling to warrant intrusion into the rights of the free press. Moreover, as the Court noted at the hearing and as the News & Observer has noted in its motion, the issues raised by this subpoena are in some respects troubling in light of the facts alleged in the underlying complaint and the identity of the parties requesting to invade the sanctity of the news gathering process. The amended complaint has alleged a "long and disturbing history of police misconduct, excessive force, and other civil rights violations against the citizen of Harnett County," [DE 59 ¶ 3], and the defendants, members of law enforcement, have through this subpoena sought to compel the press to hand over its notes and research into alleged police corruption. The subpoena's suggestion of government overreach has not gone unnoticed in the Court's analysis of the relevant factors.

Finally, defendants' opposition to the motion to quash based on a perceived failure of the News & Observer to comply with the requirements of Rule 45 is without merit. *See* Fed. R. Civ. P. 45(e)(2)(A)(ii). As the News & Observer seeks to quash the subpoena as issued in its entirety, there is no need for it to provide a privilege log on the filing of the motion.

## CONCLUSION

Accordingly, for these reasons, the balance of interests weighs decidedly in favor of the movant and against denying the News & Observer its reporters' privilege. The motion to quash [DE 81] is GRANTED and the subpoena is QUASHED in its entirety.

SO ORDERED, this __9__ day of March, 2018.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE